UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KARL E. ROBERTSON,        )
                               )
           Plaintiff,     )     Case No. 1:06-cv-451
                               )
v.                           )     Honorable Joseph G. Scoville
                               )
CITY OF GRAND RAPIDS, et al.,   )
                               )     __OPINION__
           Defendants.   )
_____)


        This is a civil rights action brought by a resident of the City of Grand Rapids, arising

from a series of encounters between plaintiff and city officers and officials.  Plaintiff's complaint

names as defendants the City of Grand Rapids, four identified city employees, a number of "John

Doe" defendants, Merl's Towing Company (a City contractor), and Judge Michael Christensen of

the 61st District Court.   By previous order, the court dismissed all named and unnamed City

employees without prejudice, because of plaintiff's failure to serve them with process.  *See* FED. R.

CIV. P. 4(m).  By opinion and order entered May 27, 2008, this court granted Judge Christensen's

motion for summary judgment, on the ground of absolute judicial immunity.  The only remaining

defendants are the City of Grand Rapids and Merl's Towing Company.  All parties have consented

to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (*See* Consent

and Order of Reference, docket # 25).

        Presently pending before the court are motions for summary judgment made on behalf

of the City of Grand Rapids (docket # 59)  and Merl's Towing Company (docket # 64).  Plaintiff has

filed a brief in opposition to each motion.  The court conducted a hearing on both motions on August

19, 2008.  No party has provided the court with any depositions, affidavits, or other factual materials

in support of or in opposition to the summary judgment motions.  Consequently, the court's decision

is based upon the pleadings alone.  After review of the record and the standards governing summary

judgments, the court concludes that plaintiff has failed to support any of his claims with evidence

sufficient to justify a jury verdict in his favor.  Defendants' motions for summary judgment will

therefore be granted.


**Findings of Fact**

As noted above, the record is essentially devoid of any factual materials.  The court

must therefore turn to plaintiff's verified complaint for a determination of the facts underlying this

controversy.

At all times relevant to this case, plaintiff was a resident of the City of Grand Rapids,

Michigan.  Plaintiff alleges that he has a long history of making public comments in opposition to

dishonest, corrupt, and illegal behavior by the City.  The complaint, however, does not identify any

particular statement made by plaintiff, the context of that statement, or the date upon which it was

made.  Plaintiff nevertheless believes that the series of municipal actions alleged in the complaint

was somehow motivated by retaliatory and discriminatory animus in response to his unidentified

public criticisms.

The complaint sets forth a series of incidents spanning a five-year period, most of

which involve allegations that plaintiff violated a municipal ordinance.  The following is a summary

of these events:

A.      In June 2003, the City prosecutor charged plaintiff with the misdemeanor of improperly storing materials of value.  After certain pretrial proceedings, plaintiff pled guilty upon advice of counsel and was sentenced on February 7, 2005, to an unidentified sentence.  Plaintiff alleges that his conviction was unfair and a violation of due process, because the court never required the City to specifically identify what "materials of value" plaintiff had stored improperly. (Compl. ¶¶ 21-28).

B.      On July 14, 2004, plaintiff encountered a Grand Rapids City police officer writing a parking ticket charging plaintiff with parking his van and trailer more than twelve inches from the curb.  Plaintiff pointed out to the officer that the vehicles were only 11-1/4 inches from the curb and that no law was violated. Plaintiff does not disclose whether the officer in fact issued the ticket.  Two days later, plaintiff received a ticket for parking the same vehicles on the parkway, meaning that the right wheels were over the curb.  The ticket was punishable by a $10.00 fine.  Four days later, on July 20, 2004, plaintiff encountered a number of police officers and two employees of defendant Merl's Towing & Transport preparing to tow the van and trailer away.  One of the tow truck operators began to smash the coupling of the vehicles with a sledge hammer in order to separate the van from the trailer.  Plaintiff confronted the officers, who indicated that the vehicles were illegally parked, because their wheels were over the curb.  Ultimately, the vehicles were not towed away or otherwise seized.  Plaintiff was required to pay $40.00 to the tow truck operators.  According to the complaint, the only damage was

-3-

to a coupling of the vehicles, not to the vehicles themselves.  Plaintiff alleges that similarly situated vehicles were not molested by officers, and that this incident represented a seizure in violation of the Fourth Amendment and an equal protection violation.  (Compl. ¶¶ 29-39).

C.    The next incident pleaded by plaintiff involves notices from the City of Grand Rapids requiring him to repair allegedly defective sidewalks in front of his home.  Plaintiff asserts a series of futile contacts with City officials in an effort to persuade them that the sidewalk was in good order and did not need repair. Ultimately, plaintiff called his City Commissioner, who prevailed upon City housing officials to drop their demand.  Nevertheless, plaintiff  alleges that the City's behavior was "motivated by vindictiveness and animus" and violated due process and equal protection.  (Compl. ¶¶ 40-44).

D.    The next incident again involves allegations that plaintiff parked vehicles in violation of municipal ordinances.  Plaintiff alleges that on February 20, 2004, the City sent him a "Notice of Recreational Vehicle Parking," notifying him that a white travel trailer parked in his front driveway violated an ordinance and constituted a civil infraction.  Plaintiff alleges that the cited zoning ordinance did not support the City's notice.  The complaint does not allege that the City took any action, beyond the sending of a notice.  Nevertheless, plaintiff believes that the City's notice is part of a "ongoing Jihad of violating Plaintiff's Civil Rights" and was an attempt by the City to prevent plaintiff from using his vehicles to move to Boston.

E.      On August 28, 2004, plaintiff received a ticket by mail for improper
storage of a vehicle in violation of municipal zoning ordinances.  The ticket again
involved plaintiff's van and trailer.  The complaint again alleges that plaintiff was in
fact not in violation of the ordinance and that the City's reading of the ordinance is
"unique" to plaintiff and has been used against no one else except him.  Plaintiff
contacted the 61st District Court, which had no record of the ticket.  Nevertheless,
forty-five days later, plaintiff received a letter from the 61st District Court that a
"conviction in absentia" was entered against him for violation of the City ordinance.
Plaintiff alleges that this "conviction" was entered in violation of due process of law
and that it was based upon suspected perjury.  Plaintiff does not explain how he
knows about the allegedly perjured testimony as he claims not to have been present
at any hearing.  (Compl. ¶¶ 57-67).

F.      Plaintiff's next allegation of civil rights violation is related to the last.
Plaintiff asserts that on October 5, 2004, he challenged the legality of his "conviction
in absentia," and was granted a court hearing on December 15, 2004.  On that day,
he appeared before Judge Michael Christensen on his motion to overturn the
conviction.  He asserts that a municipal employee, identified only as "Jane Doe,"
made numerous perjured statements to the court.  He asserts that the court refused to
accept his declaration or give credence to his statements.  The court issued a verbal
order preventing plaintiff from parking his trailer in the City of Grand Rapids, either
in a driveway or in the street.  (Compl. ¶¶ 68-80).

G.     On June 21, 2004, the City issued a notice of violation alleging that plaintiff had improperly stored materials of value in violation of the City zoning ordinance.  Plaintiff contested the citation and was granted a hearing on September 8, 2004.  Plaintiff alleges that the hearing officer apologized for the issuance of the citation and explained that plaintiff was not in violation of the ordinance.  Although plaintiff does not say so in his complaint, he was apparently acquitted of the ordinance violation.  Plaintiff nevertheless alleges that the City violated his equal protection rights as other persons were not cited for similar behavior.  (Compl. ¶¶ 81-86).

H.     Plaintiff next identifies three violation notices as representing a series of false, creative, or malevolent claims against him.  The first notice, issued January 24, 2004, again had to do with the travel trailer.  The second, dated January 1, 2004, charged plaintiff with accumulation of used or disabled vehicles on public or private property, constituting a nuisance.  Finally, in 2005 or 2006, the City placed a $73.00 lien on plaintiff's property.  The complaint does not allege whether the violation notices were ever upheld, nor does he give any information about the source or nature of the lien.  (Compl. ¶ 87).

I.     Plaintiff next asserts that in 1992, the City required him to remove his rear steps, because they blocked egress to the rear yard and were located in the setback area.  Then, in 2006, the City issued a notice requiring him to build steps, but refused to issue a building permit allowing him to do so.  Again, plaintiff does not allege how this dispute concluded.  (Compl. ¶¶ 88-93).

-6-

J.      Plaintiff next alleges that on May 24, 2006, he was issued a notice alleging several housing code violations having to do with certain deficiencies with his property, including the gutters, steps, and porch.  Plaintiff alleges that these allegations are "highly creative" and vindictive, although there may be a basis of reason to each of them.  Plaintiff does not like the fact that he was charged an $80.00 inspection fee, leading up to the issuance of the citation.  Again, plaintiff does not disclose how the citation was eventually handled.  (Compl. ¶¶ 94-100).

K.      Plaintiff next alleges that the City's scheme for levying fines is "creative" and cites as an example a bill for $100.00 he received on June 5, 2006, following the allegation of housing code violations alleged in the previous paragraph. (Compl. ¶¶ 101-02).

L.      Finally, plaintiff alleges that on June 1, 2006, he received a warning from the Office of the City Prosecutor notifying him of impending prosecution for housing code violations and threatening an arrest warrant.  Plaintiff surmises that this letter was a follow-up to the violation notice issued May 24, 2006.  Plaintiff asserts that the City has never informed him of the nature and cause of this accusation and seeks an injunction against prosecution.  (Compl. ¶¶ 103-10).

Plaintiff's complaint contains five counts.  First, he alleges violations of his right to due process and equal protection under the Fourteenth Amendment and violation of his Fourth Amendment right to be free of unreasonable searches and seizures.  Additionally, he alleges violations of his First Amendment right to petition the government, arising from the City's allegedly retaliatory actions towards him in response to his unidentified statements critical of the City.

Plaintiff's second count alleges conspiracy to violate his rights of equal protection, again in retaliation for his "disclosures of government malfeasance and corruption." The third and fourth counts are brought under Michigan law, for abuse of process and intentional infliction of emotional distress. Count 5 seeks a declaratory judgment of plaintiff's rights under federal law.

The motion for summary judgment filed by the City of Grand Rapids asserts that plaintiff has not presented sufficient evidence to support any claim under 42 U.S.C. § 1983 for violation of his federally guaranteed rights. It further asserts that plaintiff has not established any causal connection to any municipal custom, practice, policy or procedure and that a reasonable jury could not conclude that any constitutional violation had occurred or that a City custom or policy was responsible for any such violation. The motion of defendant Merl's Towing Company essentially asserts that this defendant was acting under a contractual relationship with the City of Grand Rapids and that any damage to plaintiff's padlock caused by the tow truck drivers does not give rise to a constitutional claim. In response, plaintiff has filed a brief addressing each motion, but has not provided the court with any factual material in support of his claims.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).   The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.   *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).   The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).   "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"   *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006)).   "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations.   Instead, the nonmoving party must present evidence to defeat a properly

supported motion for summary judgment.  The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).

## <u>Discussion</u>

In deciding defendants' motions for summary judgment, the critical issue before the court is whether plaintiff has presented sufficient factual material (contained in depositions, affidavits, or other appropriate sources identified by Fed. R. Civ. P. 56(e)(1)) such that a reasonable jury could find in plaintiff's favor.  Plaintiff's complaint, submitted under penalties of perjury, is deemed tantamount to an affidavit for this purpose.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).  The same rules applicable to affidavits, however, govern the court's consideration of the verified complaint.  Consequently, vague allegations, unsupported assertions of opinion, and legal conclusions (all of which are improper in an affidavit) are not sufficient to raise a triable issue of fact when set forth in a verified complaint.  *See Weberg v. Franks*, 229 F.3d 514, 526 n. 13 (6th Cir. 2000).  Applying these standards, I conclude that plaintiff's verified complaint is insufficient to raise a triable issue of fact in support of any of his federal claims.

A.    **Federal Civil Rights Claims (Counts 1 and 2)**

The claims in counts 1 and 2 may be analyzed together.  Count 1 appears to be a civil rights action brought pursuant to 42 U.S.C. § 1983 for violation of plaintiff's rights under the First, Fourth and Fourteenth Amendments.  Plaintiff asserts that the City retaliated against him for the

exercise of his First Amendment right, subjected him to an unreasonable search and seizure in violation of the Fourth Amendment and violated his right to due process and equal protection under the Fourteenth Amendment. Count 2 alleges a conspiracy under 42 U.S.C. §1985(3) to deprive plaintiff of the same rights alleged in count 1. For the reasons set forth below, the court concludes that none of plaintiff's substantive constitutional claims withstand scrutiny, and that therefore his conspiracy claim must fail as well.

### 1.    Municipal Liability

The only municipal defendant remaining in the case is the City of Grand Rapids.[1]  In order to establish municipal liability, it is not sufficient for a plaintiff to allege that municipal officers somehow violated his constitutional rights.  The City of Grand Rapids cannot be held  vicariously liable under section 1983 for the acts or omissions of its police officers.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 692 (1978); *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Municipalities may not be held liable on a *respondeat superior* theory.  *See Monell*, 436 U.S. at 691. Liability may only be found against a municipality when its employees have acted pursuant to an official policy or custom.  *Id.* at 694-95; *see Graham ex rel. Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).

The City's motion for summary judgment expressly raised plaintiff's failure to identify a municipal policy, custom, or practice or to show a causal link between that custom or

---

[1] Plaintiff's complaint also names the Grand Rapids Police Department as a defendant, but it is well established that police departments are merely arms of the city and are not juridical entities capable of suing or being sued.  *See See Haverstick Ent., Inc. v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994); *Lake v. Granholm*, 1:07-cv-572, 2008 WL 724162, at * 2 n. 1 (W.D. Mich. Mar. 17, 2008).

practice and plaintiff's alleged injuries.  Plaintiff was therefore put to the burden of producing admissible evidence sufficient to support a jury verdict on each of these elements necessary to establish municipal liability under *Monell* and its progeny.

Instead of producing evidence in response to the City's motion, plaintiff filed only a brief (docket # 75), unsupported by any evidence aside from his verified complaint.  In his brief, plaintiff advances a clearly untenable legal argument.  Plaintiff asserts that "*Monell* makes municipalities responsible for the actions of its actors, public and private." (docket # 75, at 7).  This is precisely what *Monell* does not stand for.  It has been well established for decades that a municipality is *not* vicariously liable for the acts of hits employees.  *See Monell*, 436 U.S. at 692; *Beddingfield v. City of Pulaski*, 861 F.2d 968, 971 (6th Cir. 1988).  "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell,* 436 U.S. at 694. Therefore,  plaintiff has the burden of showing a direct causal between the policy and the alleged constitutional violation such that the government's "deliberate conduct" can be deemed the "moving force" behind the violation. *Graham ex rel. Graham v. County of Washtenaw,* 358 F. 3d at 383.

Under the foregoing authorities, plaintiff's claims against the City of Grand Rapids fail both as a matter of law and fact.  As a matter of law, plaintiff's claims are based upon an untenable *respondeat superior* theory of liability.  Factually, the record is devoid of any evidence from which a reasonable jury could conclude that any of the conduct alleged in the complaint was proximately caused by the necessary municipal ordinance, policy, or custom.  Even taking plaintiff's allegations at face value, the complaint establishes no more than a series of misguided or mistaken

decisions by overly zealous municipal employees, some of which were dropped or resolved as a result of plaintiff's protests.  Plaintiff's claims against the City therefore cannot withstand scrutiny and are insufficient to submit to a jury.

Even if one were to grant the existence of municipal liability for the acts of police officers and ordinance enforcers in this case, plaintiff has not established that any of the incidents alleged in his complaint involved a deprivation of federally guaranteed rights.  Plaintiff's proofs in this regard are utterly insufficient, so an extended discussion of his claims is not necessary.  The following brief analysis of plaintiff's claims should suffice to demonstrate their lack of merit.

2.    Retaliation

The complaint alleges in vague fashion that the parking tickets, notices of ordinance violation, and other actions taken by the officers and agents of the City in this case were done in retaliation for plaintiff's exercise of free speech rights.  Plaintiff identifies himself as a long-time critic of the City of Grand Rapids and a "whistleblower."   Under Sixth Circuit law, the three elements of a retaliation claim are:

(1)    the plaintiff was engaged in a constitutionally protected activity;

(2)    the defendant's adverse action caused the plaintiff to suffer an injury that would likely deter a person of ordinary firmness from continuing to engage in that activity; and

(3)    the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 395-99 (6th Cir. 1999) (*en banc*).

The court is required to accept the well-pleaded allegations of plaintiff's verified complaint as true for purposes of adjudicating defendants' summary judgment motions.  The verified

complaint, however, fails to identify any particular public statement made by plaintiff, the context of that statement, or the date upon which it was made.  A plaintiff alleging a First Amendment retaliation claim has the obligation of identifying the alleged statement that he claims formed the basis for governmental retaliation.  *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). Plaintiff's vague and unspecific allegations do not meet this standard.  Furthermore, a plaintiff has the burden of showing that any adverse action take by the government was motivated "at least in part as a response to the exercise of plaintiff's constitutional rights."  *Thaddeus-X*, 175 F.3d at 399. Causation is not presumed, but must be established by proof.  *See Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue.  The plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity.  *Thaddeus-X*, 175 F.3d at 399; *see Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) ("[C]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive.").  Simply put, the record contains no evidence upon which a jury could find that the actions of individual police officers and ordinance enforcers were somehow motivated by a desire to punish plaintiff for his unidentified past statements against the City.

3.    Due Process Challenges to Convictions

Plaintiff's long allegation of facts challenges two criminal convictions under due process principles.  The Statement of Facts of this opinion identifies these two convictions in paragraph A (2005 plea-based conviction of ordinance violation regarding storing of materials) and

paragraphs E and F (2004 conviction "in *absentia*" for ordinance violation regarding improper storage of a vehicle).   A civil rights claim that calls in to question the validity of a criminal conviction is barred by the doctrine of *Heck v. Humphrey*.  In *Heck*, the Supreme Court held that a civil rights claim that necessarily implies the invalidity of plaintiff's criminal conviction is not cognizable under § 1983 until plaintiff's conviction has been overturned.  *Heck v. Humphrey*, 512 U.S. 447, 486-87 (1994).  "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *Edwards v. Balisok*, 520 U.S. 641,  646 (1997).  Plaintiff has not pleaded or proved that his two misdemeanor convictions have been overturned on direct appeal or collateral review.  Therefore, any civil rights action based upon these convictions must be dismissed under the authority of *Heck v. Humphrey*.

        4.       <u>Claims under Fourth Amendment and Property Damage Claim</u>

Plaintiff asserts a claim arising from  the incident occurring on July 20, 2004, when police officers and employees of Merl's Towing & Transport prepared to tow away plaintiff's van and trailer because of an alleged parking violation.[2]  Plaintiff alleges that, once he intervened, the officers ceased their efforts, but that the padlock and coupling between the van and the trailer had

---

[2] The only claims against defendant Merl's Towing arise from the attempted towing incident on July 20, 2004.  Merl's admits that it was acting pursuant to a contract with the City.  Plaintiff asserted that this contractual relationship is sufficient to establish that Merl's was acting under "color of law" for purposes of section 1983.  Merl's does not contest this assertion, which the court will accept for present purposes.  Since employees of Merl's and City officers were admittedly acting in concert, the court will analyze their liability together.

-15-

already been damaged.  Plaintiff asserts both a Fourth Amendment claim and a claim arising from the damage to his property, neither of which rises to constitutional proportions.

Plaintiff's Fourth Amendment claim arising from this incident requires a showing that his property was seized unreasonably.  A property seizure occurs when a governmental intrusion meaningfully interferes with an individual's possessory interest.  *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Fleeting or temporary actions by police are generally insufficient to meet this standard.  *See, e.g., United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1160-62 (9th Cir. 2007) (no seizure when package was detained ten minutes because recipient was not deprived of a possessory interest and interference was minimal); *United States v. Lovell*, 849 F.2d 910, 916 (5th Cir. 1988) (no seizure of luggage when it was briefly detained because no interference with possessory interest). The courts generally require a greater intrusion than existed in the present case.  *See, e.g., Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (seizure occurred for Fourth Amendment purposes when deputy sheriffs and owner of mobile home park dispossessed owners of their mobile home by physically tearing it from foundation and towing it to another lot); *Revis v. Meldrum*, 489 F.3d 273, 287 (6th Cir. 2007) (seizure occurred when deputy took possession of debtor's house, changed locks, retained key, and evicted debtor).  Assuming that an unauthorized towing of plaintiff's vehicles would have constituted a seizure for Fourth Amendment purposes, it is clear that no such seizure occurred in this case.  By plaintiff's own telling of the events, officers were only preparing to tow the vehicle when plaintiff intervened.  Defendants never accomplished a significant interference with plaintiff's possessory interests.  The only consequence of the event was some minor property damage.  In these circumstances, no viable Fourth Amendment claim exists.

Plaintiff also asserts a due process claim arising from the damage to the padlock and trailer hitch.  Read with the required liberality, this allegation might adequately set forth a claim for deprivation of property without due process of law.   A plaintiff asserting a procedural due-process claim arising from a random and unauthorized act of a state officer must first plead and prove the absence of an adequate state remedy.  *See Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986);  *Fox v. Van Oosterum*, 176 F.3d 342, 348-49 (6th Cir. 1999);  *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995).  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Plaintiff did not plead or prove the absence of an adequate state remedy for any damage to his property that may have occurred as a result of the July 20, 2004 attempted towing incident.   Clearly, a state-law tort claim for conversion or trespass to chattels would adequately compensate plaintiff for any damage to the trailer coupling or padlock.  *See Burns v. Kilpatrick*, 51 N.W. 893 (Mich. 1892); *Ansley v. Conseco Fin. Serv. Corp.*, 2002 WL 31955217, at * 2 (Mich. Ct. App. 2002).

5.    Equal Protection Violation

One of plaintiff's central contentions in this case appears to be that the "Jihad" waged against him by municipal police officers and zoning officials deprived him of equal protection of the law, in violation of the Fourteenth Amendment.   At its heart, the Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated similarly.  *See City of*

-17-

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Consequently, it is necessary for plaintiff to demonstrate that some person or persons in reasonably similar circumstances were treated more favorably than was plaintiff.  *See Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146, 2153 (2008); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002).  In his brief, plaintiff frankly admits that he cannot identify any such similarly situated person.  To remedy this deficiency, plaintiff attempts to rely on the concept of a "class of one" to establish his equal protection claim.

The Supreme Court recently held in *Engquist v. Oregon Dep't of Agriculture* that a "class-of-one" theory is available only in limited contexts.[3]  The Supreme Court held that the "class-of-one" theory was not appropriate for areas involving discretionary determinations:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike under like circumstances and conditions" is not violated when one person is treated differently than others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a single person would undermine the very discretion that such state officials are entrusted to exercise.

128 S. Ct. at 2154.  The example the Supreme Court used to illustrate this point was a traffic officer stationed along a busy highway where people often drive above the speed limit, with the officer giving a speeding ticket to one driver.  "[A]llowing an equal protection claim on the ground that the ticket was given to one person and not others, even for no discernable or articulable reason, would

---

[3]The Supreme Court first recognized the theory in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), where the village had required a 15-foot easement from property owners in order to connect their property to the municipal water supply, yet the village had singled out Mr. Olech and demanded that he grant the village a 33-foot easement.  "This differential treatment [of like-situated property owners] raised a concern for arbitrary classification, and [the Court] therefore required the State to provide a rational basis for it."  128 S. Ct. at 2153-54.

be incompatible with the discretion inherent in the challenged action.  It is no proper challenge to what is in its nature a subjective, individualized decision that it was subjective and individualized." *Id.* at 2154.  All of plaintiff's claims relate to discretionary decisions by City police officers or housing officials to cite plaintiff for various infractions.  Plaintiff's "class-of-one" equal protection claims are not viable in the wake of the Supreme Court's *Enquist* decision.

6.    <u>Conspiracy Claim</u>

Count 2 alleges a claim for civil conspiracy.  In essence, plaintiff asserts that the various deprivations of civil rights alleged in count 1 were the object of a conspiracy among municipal actors.  Claims for civil conspiracy are governed by 42 U.S.C. § 1985(3), which provides in relative part as follows:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to prove a private conspiracy in violation of the first clause of section 1985(3), a plaintiff must prove:  (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) and an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). The plaintiff must show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03

-19-

(1971); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005). The Sixth Circuit has stated that "§ 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Bartell v. Lohiser,* 215 F.3d 550, 559 (6th Cir. 2000) (*quoting Browder v. Tipton,* 630 F.2d 1149, 1150 (6th Cir. 1980)); *accord, Seguin v. City of Sterling Heights,* 968 F. 2d 584, 590 (6th Cir. 1992) (landowners challenging zoning regulations were not an adequate class). "Further, 'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim.'" *Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 832 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1358-39 (6th Cir. 1987)).

Plaintiff's verified complaint does not identify a conspiracy motivated by racial, or other class-based, invidiously discriminatory animus. In fact, plaintiff asserts that the City singled him out for discriminatory treatment. He alleges that the City acted because of its political animus against him as a whistleblower, not because of his membership in a racial or other definable class. This is the opposite of the situation covered by section 1985(3). Plaintiff has not identified any clearly defined class sufficient to support a federal civil-rights conspiracy claim.

### B.    Pendent State-Law Claims

Plaintiff asks the court to exercise supplemental jurisdiction over counts 3 and 4: state-law claims for abuse of process and intentional infliction of emotional distress. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts

decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. §
1367(c)(3); *see also Brown v. Cassens Transp., Inc.*, No. 05-2089, __ F.3d __, 2008 WL 4658643,
at * 12 (6th Cir. Oct. 23, 2008); *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F. 3d
840, 853 (6th Cir. 2007); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).
There is no reason in this case to depart from the general rule. The court, in its discretion, will
decline to exercise supplemental jurisdiction, and counts 3 and 4 will be dismissed without
prejudice.

## Conclusion

For the reasons set forth herein, the motions for summary judgment by defendants
City of Grand Rapids and Merl's Towing Company (docket #'s 59, 64) will be granted, and
judgment will be entered in favor of the defendants on all federal claims. Counts 3 and 4 will be
dismissed without prejudice.

Dated:   November 4, 2008              /s/  Joseph G. Scoville
                                       United States Magistrate Judge

-21-